UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KELLY MCSEAN,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        No. 4:23 CV 1086 CDP
                                       )
DERICK BAINBRIDGE,                     )
                                       )
                Defendant.             )

## MEMORANDUM AND ORDER

Self-represented plaintiff Kelly McSean brings this action under 42 U.S.C. §
1983 alleging that defendant Derick Bainbridge, an officer of the St. Francois
Sheriff's Department, retaliated against her for exercising her First Amendment
right to pursue the grievance process while she was a pretrial detainee at the St.
Francois County Jail.[1]   Bainbridge moves for summary judgment on McSean's
claim, arguing that he is entitled to qualified immunity in the circumstances of the
case.   For the following reasons, I agree and will grant Bainbridge's motion for
summary judgment.   I will deny McSean's two "motions for summary judgment,"
as they merely seek to reopen discovery in the case.[2]

---

[1] McSean's additional claims of sexual harassment, sexual assault, sex discrimination, and verbal
abuse were dismissed upon the Court's initial review of McSean's complaint under 28 U.S.C. §
1915(e).   (ECF 6, Memo. & Ord., Dec. 7, 2023.)   The other named defendant, Jessica Lemons,
was later dismissed for McSean's failure to effect service of process on her.   (ECF 37, Memo. &
Ord., Apr. 23, 2024.)

[2] Except for the dates on the certificates of service, the two "motions" are identical.   (*See* ECF

## Legal Standard

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As the moving party, defendant must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam).

Under Local Rule 4.01(E), moving parties must include a Statement of Uncontroverted Material Facts with their memorandum, with citations to the record establishing each relevant fact. The Local Rule also requires that every

---

88, 96.) On August 28, 2025, I denied McSean's separate motion to reopen discovery. (ECF 100, 102.)

memorandum in opposition must be accompanied by a document responding to the Statement of Uncontroverted Material Facts that sets forth each relevant fact as to which the opposing party contends a genuine issue exists.    E.D. Mo. L.R. 4.01(E).

> The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies.    The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.    *All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party*.

*Id.* (emphasis added).    Here, McSean did not respond to Bainbridge's Statement of Uncontroverted Material Facts.    Under Local Rule 4.01(E), therefore, I deem admitted the facts set out in Bainbridge's Statement (ECF 91).    *See Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material facts, it was deemed admitted under E.D. Mo. L.R. 4.01(E)); *see also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.") (internal quotation marks and citation omitted).

### Evidence Before the Court on the Motion

Plaintiff McSean is a transgender female.    At all times relevant to this action, she was detained at the St. Francios County Jail.    In June 2023, defendant Bainbridge was a deputy with the St. Francios County Sheriff's Department and

worked at the Jail.

On May 27, 2023, McSean submitted an Inmate Request Form to the Jail, asking a "general question" about the American Civil Liberty Union's (ACLU's) contact with the Jail regarding her "issue with gender dysphoria."   In the Form, McSean requested that the Jail allow her her "rights as [a] transgender/female." (ECF 91-2.)   On May 30, 2023, McSean submitted a Sick Call Request to the Jail, asking to be seen regarding her "transgender issues" and again referencing communication from the ACLU on the matter.   (ECF 91-4.)   Until the filing of this lawsuit, Bainbridge was not aware of any communication from the ACLU to anyone at the Sheriff's Department regarding plaintiff McSean.

On June 10, 2023, McSean submitted an Inmate Request Form regarding the ability to purchase and have female undergarments.   On June 21, 2023, McSean wrote the following note on a Commissary Order Form:   "Is there any possibilities of being able to buy female undergarments (bras/panties) on canteen, by transgender females."   (ECF 91-5.)   On that same date, June 21, Deputy Jessica Lemons entered the booking area of the Jail, asked where McSean was housed, and stated she wanted to speak with McSean.   Bainbridge accompanied Lemons to the housing unit and to McSean's cell, where Lemons spoke to McSean about her interaction with the Jail's commissary officer.   Bainbridge stood at the cell door next to Lemons while Lemons spoke to McSean.   McSean remained in her cell during the conversation.   During this encounter, Bainbridge asked McSean if she

understood Lemons and he directed McSean to answer her.   At least twice during Lemons' conversation with McSean, Bainbridge asked McSean if her mumbled responses to Lemons meant "Yes, ma'am."   Bainbridge also had his left hand at his waist, resting on a pouch attached to his duty belt that contained a small can of mace.   Bainbridge declares that he has a habit of resting his hands or forearms on his duty belt when he is not using his hands.   Bainbridge did not open the pouch or remove the can of mace from his belt at any time while he was at McSean's cell. Nor did he make any statements about the mace.   At no time did Bainbridge make any physical contact with McSean while at her cell.

McSean contends that she felt threatened by Bainbridge's demand that she say "Yes ma'am" to Lemons with his hand on his can of mace and that such conduct constituted retaliation for her exercise of her First Amendment rights.   On initial review of the complaint, the Court construed McSean's claim as one for retaliation for petitioning for redress of a grievance relating to her submitting an Inmate Request Form for undergarments.   (*See* ECF 6, Memo. & Ord. at pp. 6-7.)[3] Bainbridge is entitled to qualified immunity on the claim.

---

[3] Given that previous determination, I will not revisit whether McSean's submission of an Inmate Request Form regarding the availability of certain commissary items constitutes an action seeking redress for a grievance that is protected by the First Amendment.   *But see Davis v. Ruble*, No. 4:21-CV-1215 RLW, 2024 WL 1328248, at *5 (E.D. Mo. Mar. 28, 2024) (no evidence in record that plaintiff filed a grievance before alleged retaliation; no legal authority that arguing with guard and going to supervisor amounts to constitutionally protected activity).

**Discussion**

As a government official being sued in his individual capacity,[4] Bainbridge

is entitled to qualified immunity on McSean's claim for civil damages if his

conduct did not violate "clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982); *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 835 (8th Cir.

2021). A two-step inquiry applies to a qualified-immunity defense: 1) whether

the plaintiff has alleged facts to show a violation of a constitutional right, and 2)

whether that right was clearly established at the time of the alleged misconduct.

*Quraishi*, 986 F.3d at 835 (citing *Smith v. Kansas City Police Dep't*, 586 F.3d 576,

580 (8th Cir. 2009)). I may consider either prong first. *Id.* If the answer to

either question is no, then the defendant is entitled to qualified immunity. *Baude*

*v. City of St. Louis*, 476 F. Supp. 3d 900, 909 (E.D. Mo. 2020) (citing *Doe v.*

*Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010)).

McSean has the burden to show that the right was clearly established at the

time of the alleged violation. *Quraishi*, 986 F.3d at 835 (citing *Davis v. Scherer*,

468 U.S. 183, 197 (1984)). To be clearly established, the "contours of the right

must be sufficiently clear that a reasonable official would [have understood] that

what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

---

[4] The Court previously dismissed McSean's official-capacity claims. (ECF 6, Memo. & Ord.,
Dec. 7, 2023.)

(1987).    The state of the law at the time of the alleged violation – whether articulated by precedent, controlling authority, or a robust consensus of cases of persuasive authority – must give officials fair warning that their conduct is unlawful.    *Quraishi*, 986 F.3d at 835.    *See also Taylor v. Barkes*, 575 U.S. 822, 825 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").    The legal principle must "clearly prohibit the officer's conduct in the particular circumstances before him."    *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).    Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."    *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

    "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established."    *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (citation modified).    Those First Amendment freedoms include the right to seek redress under a prison's grievance system.    *Santiago v. Blair*, 707 F.3d 984, 994 (8th Cir. 2013).    To establish a First Amendment claim of retaliation under § 1983, McSean must show that:    1) she engaged in protected activity, 2) Bainbridge took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and 3) the adverse action was motivated by Bainbridge's retaliatory animus toward McSean's exercise of the protected activity.    *Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023).    The retaliatory animus must be the "but-for" cause of the

adverse action.   *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).

With respect to the first prong of the qualified-immunity analysis, that is, whether McSean can show a violation of a constitutional right, Bainbridge argues only that there is no evidence that at the time of his encounter with McSean on June 21, 2023, he knew of any ACLU communications or had received or reviewed any of McSean's commissary requests or Inmate Request Forms, and that McSean therefore cannot establish a causal connection between her claimed protected activity and his alleged misconduct.   Viewing the facts in a light most favorable to McSean, however, it is apparent that Bainbridge became aware of McSean's commissary requests and Inmate Request Forms during Lemons' conversation with McSean at her cell, given that he was present during that conversation and directed McSean to respond to Lemons' questions regarding the requests.   Bainbridge's lack of receipt or review of the written requests themselves does not necessarily mean that he was not aware of them.

Bainbridge raises no other argument challenging whether McSean has shown a violation of a constitutional right.

As to the second prong of the qualified-immunity analysis, I agree with Bainbridge that McSean has failed to show that his directive that she answer Lemons' questions and his resting his hand on a can of mace secured in a pouch on his duty belt, with nothing more, constituted retaliatory conduct so clearly established that Bainbridge would have known that he was violating McSean's

constitutional right to be free from retaliation.   I am aware that "conduct that

retaliates against the exercise of a constitutionally protected right is actionable

even if the alleged retaliatory conduct does not itself rise to the level of a

constitutional violation," *Santiago*, 707 F.3d at 994 (citation modified), but it

cannot be said that "it would have been clear to a reasonable officer that

[Bainbridge's] alleged conduct 'was unlawful in the situation he confronted.'"

*Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (quoting *Saucier v. Katz*, 533 U.S. 194,

202 (2001)).

At the time of Bainbridge's conduct, no precedent had clearly established

that directing an inmate to respond to an official's questions while resting his hand

on a closed pouch of his duty belt that contained a small canister of mace

constituted unlawful retaliatory conduct.   While cases have addressed instances in

which jail officials unconstitutionally retaliated against inmates with threats of

serious harm to safety, physical and verbal intimidation, harassment, and

deprivation in living conditions, *e.g.*, *Santiago*, 707 F.3d at 992-94 (listing cases),

those cases do not address a sufficiently close analogue to the circumstances here

where Bainbridge did not engage in any threatening, intimidating, or harassing

behavior nor impose any conditions on McSean that could be considered

retaliatory.   I am not aware of any case or legal authority – and McSean cites to

none – that provides the necessary guidance for a reasonable officer to know that

Bainbridge's alleged conduct was "clearly prohibited" in the circumstances.

*Wesby*, 583 U.S. at 63.   Bainbridge is therefore entitled to qualified immunity on McSean's claim that his conduct violated McSean's right to be free from retaliation for exercising her First Amendment rights.   *Cf. Morgan v. Robinson*, 920 F.3d 521, 526-27 (8th Cir. 2019) (citing *Brickey v. Hall*, 828 F.3d 298, 305 (4th Cir. 2016) (officer entitled to qualified immunity where plaintiff had not directed court to any case that would have clearly warned officer that conduct violated First Amendment rights)).

Accordingly,

**IT IS HEREBY ORDERED** that defendant Derick Bainbridge's Motion for Summary Judgment [89] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Kelly McSean's Motions for Summary Judgment [88] [96] are **DENIED**.

An appropriate Judgment is entered separately this date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 23rd day of January, 2026.